IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

CRYSTAL ZOE
AMARILLAS-NORZAGARAY

    *Defendant.*

Case No. 14-10017-EFM

**MEMORANDUM AND ORDER**

This matter comes before the Court on Crystal Zoe Amarillas-Norzagaray's Motion to Suppress (Doc. 23). Amarillas-Norzagaray contends that all evidence and statements obtained during a traffic stop should be suppressed because the stop was not justified at its inception and because she was not read her *Miranda* rights. Because the Court agrees that the state trooper did not complete a valid reading of *Miranda* rights, which the government concedes, the Court grants Amarillas-Norzagaray's motion as to most of her statements with a few exceptions. The Court, however, denies the motion as it relates to the evidence seized as a result of the traffic stop because the Court finds that the stop was objectively justified at its inception.

**I. Factual and Procedural Background**

On December 30, 2013, Crystal Zoe Amarillas-Norzagaray was stopped by Kansas Highway Patrol Trooper James McCord on Interstate 70 in Ellis County west of Hays, Kansas.

Almost immediately after Amarillas-Norzagaray pulled over, a passenger opened the door and ran south into a field. The trooper asked Amarillas-Norzagaray why the passenger fled, and she responded, "He is scared." The trooper then ordered Amarillas-Norzagaray out of the car, handcuffed her, and placed her in the passenger seat of his patrol car. The trooper observed a bundle of marijuana behind the driver's seat and later found several more bundles of marijuana in the trunk. The total amount of marijuana in the car was estimated to be 100 kilograms.

After securing Amarillas-Norzagaray in the patrol car, the trooper forcused his attention on soliciting help to pursue the fleeing passenger. At some point, the trooper started to read *Miranda* rights to Amarillas-Norzagaray, but he never finished because he was interrupted by a phone call or radio traffic seeking information about the passenger. The trooper then asked Amarillas-Norzagaray several questions about her involvement with the marijuana, the car, and the passenger. Amarillas-Norzagaray was cooperative and answered the questions. The trooper told Amarillas-Norzagaray that she was stopped for following another vehicle too closely. Later, the trooper indicated in a report that his radar clocked the rental car driven by Amarillas-Norzagaray going 80 mph in a 75-mph zone and that he observed the car cross the fog line.

At some point, Amarillas-Norzagaray's cell phone rang and the trooper answered, but the caller did not speak to him. It was determined that the caller was Amarillas-Norzagaray's mother, and the trooper allowed Amarillas-Norzagaray to call her mother on the condition that she speak English and put the call on speakerphone. During the brief conversation, Amarillas-Norzagaray told her mother that she had been stopped, that the passenger fled, that she was going to jail, and that she loved her. Amarillas-Norzagaray later was booked into the county jail.

In February 2014, a federal grand jury returned an indictment charging Amarillas-Norzagaray with: 1) conspiracy to distribute a controlled substance, 2) possession with intent to

distribute, and 3) interstate travel in aid of a racketeering enterprise. In March 2014, Amarillas-Norzagaray filed this motion to suppress the marijuana and all of her statements. The Court held a hearing on the motion in May 2014.

## II. Analysis

Amarillas-Norzagaray raises two issues in her motion to suppress. First, she questions whether the traffic stop was justified at its inception. Second, she argues for suppression of all of her statements because her *Miranda* rights were violated. The government acknowledges that the trooper did not complete reading Amarillas-Norzagaray her *Miranda* rights and concedes that it is foreclosed from using most of her statements against her in its case in chief. But the parties disagree about whether the government may use these statements for impeachment purposes if Amarillas-Norzagaray chooses to testify in her defense.

### A. The Stop Was Objectively Justified at Its Inception

The trooper arrested Amarillas-Norzagaray almost immediately after the passenger fled. After Amarillas-Norzagaray was handcuffed and placed in the police car, the trooper told her that he stopped her for following too closely. The trooper also indicated in his report that she was driving 80 mph in a 75-mph zone and that her car crossed the fog line. But he never told her about those two violations and did not issue any traffic citations. Amarillas-Norzagaray contends that the stop was pretextual and that evidence does not support the allegations of minor traffic violations.

Under the Fourth Amendment, a traffic stop must be "objectively justified" at its inception.[1] That means that a traffic stop must be 1) "based on an observed traffic violation" or

---

[1] *United States v. Nicholson*, 721 F.3d 1236, 1238 (10th Cir. 2013).

2) based on an officer's "reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."[2] The law requires far less than perfect certainty of a traffic violation before an officer may initiate a stop.[3]

Here, any of the three reasons that the trooper testified about during the suppression hearing are enough to make the traffic stop objectively justified. For one, clocking Amarillas-Norzagaray's rental car at 80 mph in a 75-mph zone is sufficient to meet the burden of reasonable suspicion that she violated a traffic law.[4] And the trooper testified that Amarillas-Norzagaray was following too closely—between 1.25 and 1.5 seconds behind a semi—which was supported by a video admitted during the suppression hearing.[5] Likewise, crossing the fog line provides reasonable suspicion to support a stop.[6] The trooper provided credible testimony about these violations, which were not disputed during the suppression hearing. Therefore, the Court finds that the stop, under these circumstances, was objectively justified at its inception.

**B. Most of Amarillas-Norzagaray's Statements Must be Suppressed**

Three sets of statements are at issue here. The first is Amarillas-Norzagaray's response that "he is scared" when the trooper initially asked her why the passenger was running away. The second are statements made by Amarillas-Norzagaray to her mother during a phone call placed in the trooper's presence. The third are statements made during a conversation between the

---

[2] *Id.* (quoting *United States v. Eckhart*, 569 F.3d 1263, 1271 (10th Cir. 2009)).

[3] *United States v. Esquivel-Rios*, 725 F.3d 1231, 1235 (10th Cir. 2013).

[4] *See United States v. Ramirez*, 2012 WL 4667266, at *2 (D. Kan. Oct. 3, 2012) (finding traffic stop for 80 in a 75 to be reasonable).

[5] *See United States v. Hunter*, 663 F.3d 1136, 1143 (10th Cir. 2011) (noting that following closer than two seconds supports reasonable suspicion to support a stop for following too closely under Kansas law).

[6] *See United States v. Harmon*, 742 F.3d 451, 453 (10th Cir. 2014) (affirming finding of a reasonable stop for single instance of weaving and crossing the fog line).

trooper and Amarillas-Norzagaray that took place without a valid *Miranda* warning while Amarillas-Norzagaray was handcuffed in the patrol car.

First, the Court agrees that Amarillas-Norzagaray's initial statement that the passenger "is scared" need not be suppressed because it took place before Amarillas-Norzagaray was under arrest. Likewise, the Court agrees that any statements that Amarillas-Norzagaray made to her mother are admissible because they were not the result of a deliberate elicitation by the trooper. Interrogation, under *Miranda*, includes any words or actions that an officer should know are reasonably likely to elicit an incriminating response from a suspect.[7] Here, there was no evidence that the trooper allowed Amarillas-Norzagaray to call her mother for the purpose of overhearing incriminating statements. The Court cautions that just because these statements are not suppressed does not necessarily mean they would be deemed relevant evidence at trial. That is a different question not before the Court at this time.

The remaining issue is whether statements made by Amarillas-Norzagaray to the trooper while under arrest in the patrol car may be used to impeach her credibility should she choose to testify at trial. As noted, the government concedes that it cannot use these statements in its case in chief because Amarillas-Norzagaray was not properly read her *Miranda* rights. The government, however, maintains that her statements may be admissible for impeachment if she testifies contrary to anything she told the trooper. Amarillas-Norzagaray contends that the statements should be inadmissible for all purposes because they were involuntary.

---

[7] *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

The Fifth Amendment right to be free from self-incrimination is violated whenever a truly coerced statement is introduced at trial, even if it used for impeachment.[8] But the United States Supreme Court has consistently held that tainted evidence, even if obtained in a constitutionally invalid manner, is admissible for impeachment based on the concept that the need to prevent perjury outweighs any deterrent effect of exclusion.[9] A *Miranda* violation creates a presumption of coercion, but this presumption does not mean that the statements must be discarded as inherently tainted.[10] Nor does the presumption mean that voluntary statements must be barred for impeachment purposes on cross-examination.[11] Specifically, statements made in the course of a *Miranda* violation are admissible for impeachment purposes if their trustworthiness satisfies legal standards.[12] But any trial use, including impeachment, of a defendant's involuntary statement is a denial of due process.[13]

The question, therefore, turns on whether Amarillas-Norzagaray's statements were voluntary or involuntary. The determination of whether an incriminating statement was voluntary must be viewed in the context of the totality of the circumstances.[14] A voluntary statement is the product of a free and rational choice.[15] One mark of an involuntary statement is if it is the product of a person whose will has been overborne and capacity for self-determination critically

---

[8] *Kansas v. Ventris*, 556 U.S. 586, 590 (2009).

[9] *Id*. at 593-94.

[10] *Oregon v. Elstad*, 470 U.S. 298, 307 (1985).

[11] *Id*.

[12] *Mincey v. Arizona*, 437 U.S. 385, 397-98 (1978).

[13] *Id*. at 398.

[14] *Arizona v. Fulminante*, 499 U.S. 279, 286 (1991).

[15] *Mincey*, 437 U.S. at 401.

impaired.[16] Often this is the result of a credible threat of violence.[17] The Tenth Circuit has listed several factors for this Court to consider:

> A number of factors must be considered in assessing whether a confession is voluntary. These factors include the age, intelligence, and education of the suspect; the length of the detention and questioning; the use or threat of physical punishment; whether *Miranda* safeguards were administered; the accused's physical and mental characteristics; and the location of the interrogation. The court must also consider the conduct of the police officers.[18]

Here, the Court is not persuaded that Amarillas-Norzagaray's statements were involuntary. During the suppression hearing, there was evidence that Amarillas-Norzagaray was 22, 5-foot-2, and 110 pounds at the time of the stop. She was detained for about an hour and 45 minutes before being booked into the county jail, and she was questioned about her involvement—without a valid *Miranda* warning—while handcuffed in the front seat of the patrol car. The trooper was wearing a firearm on his hip, but there was no threat of physical punishment. The video shows that the trooper engaged Amarillas-Norzagaray in a matter-of-fact conversation and that she answered his questions readily and without coercion. Nothing about the exchange calls into question the trustworthiness of Amarillas-Norzagaray's responses. There is no dispute that these statements must be suppressed and may not be used in the government's case in chief. However, the Court finds that these statements were voluntary to the extent that they may be admissible for impeachment purposes.

In summary, the Court finds that the traffic stop was justified and the evidence seized from the car is admissible. Also admissible are statements made by Amarillas-Norzagaray before

---

[16] *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961).

[17] *Fulminante*, 499 U.S. at 287; *Mincey*, 437 U.S. at 401.

[18] *United States v. Perdue*, 8 F.3d 1455, 1466 (10th Cir. 1993) (citations omitted).

she was handcuffed as are statements she made during a phone call to her mother. All other statements made by Amarillas-Norzagaray to the trooper must be suppressed, but they may become admissible for impeachment purposes at trial under the proper circumstances.

**IT IS THEREFORE ORDERED** that the Motion to Suppress (Doc. 23) is hereby **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED**.

Dated this 21st day of May, 2014.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE